[Cite as *Moore v. Mt. Carmel Health Sys.*, 2018-Ohio-2831.]

**IN THE COURT OF APPEALS OF OHIO
TENTH APPELLATE DISTRICT
FRANKLIN COUNTY**

MICHAEL MOORE, CONSERVATOR   :
OF THE PERSON AND ESTATE OF   :
JUSTIN T. MOORE   :  Appellate Case No. 2017APE-10-754
  :
   Plaintiff-Appellant   :  Trial Court Case No. 15-CVA-005683
  :
v.   :  (Civil Appeal from
  :  Common Pleas Court)
MOUNT CARMEL HEALTH SYSTEM   :
dba MOUNT CARMEL ST. ANN'S   :
HOSPITAL, et al.

   Defendants-Appellees

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of July, 2018.

. . . . . . . . . .

DAVID I. SHROYER, Atty. Reg. No. 0024099, 536 South High Street, Columbus, Ohio 43215
   Attorney for Plaintiff-Appellant Michael Moore, Conservator

GRIER D. SCHAFFER, Atty. Reg. No. 0039695, 2075 Marble Cliff Office Park, Columbus, Ohio 43215
   Attorney for Defendant-Appellee Mount Carmel Health System dba Mount Carmel St. Ann's Hospital

THEODORE M. MUNSELL, Atty. Reg. No. 0022055, JOEL E. SECHLER, Atty. Reg. No. 0076320, and EMILY M. VINCENT, Atty. Reg. No. 0086931, 280 Plaza, Suite 1300, 280

North High Street, Columbus, Ohio 43215
      Attorneys for Defendants-Appellees Central Ohio Anesthesia, Inc. and Eric
      Humphreys, M.D.

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Plaintiff-Appellant Michael Moore, Conservator of the Person and Estate of Justin T. Moore ("Moore") appeals from a judgment dismissing his claims against Defendants-Appellees Mount Carmel Health System dba Mount Carmel St. Ann's Hospital ("Mount Carmel"), Central Ohio Anesthesia, Inc. ("COA"), and Eric Humphreys, M.D. According to Moore, the trial court erred by failing to apply the savings statute when the original complaint failed otherwise than on the merits and Moore's request for service on Dr. Humphreys acted as a refiling of the complaint within one year of the failure. For the same reason, Moore contends that the trial court also erred in dismissing the vicarious liability claims against Mount Carmel and COA. Finally, Moore maintains that the trial court erred in dismissing his respondeat superior claims against COA because Dr. Humphreys was an employee, not a partner or co-owner of COA.

{¶ 2} For the reasons discussed below, we conclude that Moore's request for service of the complaint was, by operation of law, a dismissal and refiling of the complaint, and was a failure otherwise than on the merits. The trial court, therefore, erred in failing to apply the savings statute. Based on this error, the trial court also erred in dismissing the vicarious liability claims against COA and Mount Carmel. We further conclude that in light of these errors, whether the trial court erred in its conclusion about Dr. Humphreys's status as an employee of COA is moot. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I.  Facts and Course of Proceedings

{¶ 3} This case arose from the Appellees' medical treatment of Justin Moore ("Justin") in December 2013 and January 2014.  According to the complaint, Justin received medical care from Dr. Wesley Forgue, the Dialysis Center of North Columbus, The Little Clinic, and two nurses during December 2013 through January 2014.  The complaint further alleged that these parties failed to properly treat Justin when he presented for treatment of a cough and during hemodialysis, which caused Justin to be transferred on an emergency basis to Mouth Carmel on January 20, 2014.  In addition, the complaint alleged that when Justin was treated at Mount Carmel on January 20, 2014, Dr. Humphreys and others failed to properly and timely perform endotracheal intubation, which resulted in hypoxia, cardiac and respiratory arrest, and a permanent anoxic brain injury.  These events, in turn, allegedly caused Justin permanent injury, including loss of his ability to walk and care for himself, impairment of his speech and communication ability, and other debilitating injuries.

{¶ 4} On July 10, 2014, the Cuyahoga County Probate Court appointed Moore conservator of Justin's person and estate.  Moore subsequently filed a pro se medical malpractice action against Mount Carmel, COA, Dr. Humphreys, Dr. Wesley Forgue, the Dialysis Center of North Columbus, The Little Clinic, and two nurses who had treated Justin before his admission to Mount Carmel.  COA was the medical practice that employed Dr. Humphreys.

{¶ 5} The malpractice action was filed on July 6, 2015, and Moore brought the action in his capacity as Justin's conservator, and on Justin's behalf.  On the same day,

Moore requested service of process by certified mail on various defendants, including Mount Carmel, COA, and Dr. Humphreys.   The address for Dr. Humphreys was listed as Mt. Carmel St. Ann's Hospital, 500 South Cleveland Avenue, Westerville, Ohio, 43081. In contrast, COA's service address was listed in care of its statutory agent, David A Perdzock, at 3100 Adena Point Court, Columbus, Ohio, 43221.   On July 16, 2015, the clerk of courts filed a notice indicating that service on Dr. Humphreys was complete.

{¶ 6} Previously, on July 6, 2015, Moore had filed a motion for a 90-day extension of time to file an affidavit of merit.   Ultimately, on July 23, 2015, the trial court granted an extension of time to September 1, 2015.   In its decision, the trial court commented that an issue might exist regarding Moore's ability to represent himself, since he was not a lawyer.   However, the court also said that nothing needed to be done concerning this point until September 1, 2015, when the affidavit of merit was due.   *See* Doc. #43, p. 2.

{¶ 7} On July 30, 2015, attorneys from Carpenter and Lipps, LLP, filed notices of appearance on behalf of COA and Dr. Humphreys.   On the same day, these attorneys filed answers on behalf of COA and Dr. Humphreys.   The answers denied that Dr. Humphrey was an employee of Mount Carmel.   The answers also stated: "Admit Central Ohio Anesthesia, Inc., is an entity through which its physicians and staff provide anesthesia services, and at all times Eric Humphreys, M.D. was an employee of Central Ohio Anesthesia."   Doc. #50 and Doc. #51, p. 2, paragraph 4.

{¶ 8} The answers also stated as defenses that Moore was not a proper party and lacked proper standing to bring the lawsuit, that the complaint failed for insufficiency of process and/or insufficiency of service of process, and that the complaint might be barred in whole or in part by the statute of limitations.   *Id.* at pp. 2-3, paragraphs 13, 15, and 16.

{¶ 9} On August 3, 2015, the clerk of courts filed an envelope, along with the July 23, 2015 order, which indicated that mail had been returned and that the order had not been served on Dr. Humphreys.   This was the court order concerning the affidavit of merit that had been sent to Dr. Humphreys at the Mount Carmel address.   The envelope stated "Return to Sender Not at this Address."   Doc. #52.

{¶ 10} On September 1, 2015, an attorney (David Shroyer) filed a notice of appearance on Moore's behalf.   On the same day, Moore asked for an extension of time to file affidavits of merit.   Moore noted that he had filed an affidavit of merit from a specialist in anesthesiology and critical care regarding Dr. Humphreys and other agents and employees of Mount Carmel, but needed more time for affidavits concerning the remaining defendants like the dialysis clinic.   No further affidavits of merit were filed, and on January 18, 2016, Moore dismissed The Little Clinic, Emily Sinay, FNP-BC, and Nicole Drauhuschak, RN, FNP, pursuant to Civ.R. 41(A)(1)(a), without prejudice.   On February 18, 2016, Moore also dismissed Dr. Forgue and the Dialysis Center without prejudice, pursuant to Civ.R. 41(A)(1)(a).   The only remaining defendants at that time were Mount Carmel, COA, and Dr. Humphreys.   Subsequently, in October 2016, Moore took the deposition of Dr. Humphreys, which revealed that Dr. Humphreys had retired from practice in December 2014.

{¶ 11} On January 23, 2017, COA and Dr. Humphreys filed a motion to continue the jury trial, which had been set for July 3, 2017, and the court granted the motion.   The court then set a final pretrial for October 5, 2017, and a jury trial for October 10, 2017.

{¶ 12} Subsequently, on February 27, 2017, Dr. Humphrey and COA filed a motion for summary judgment, contending that the action was barred because Moore failed to

serve Dr. Humphreys within one year of the filing of the complaint. Mount Carmel also filed a motion for summary judgment on February 28, 2017, arguing that no vicarious liability attached to the hospital because Dr. Humphrey was not an employee and had not been timely served. In addition, Mount Carmel alleged that Moore, as conservator, lacked legal capacity to file the action and the claims were now time-barred.

{¶ 13} On March 2, 2017, Moore filed a request for personal service of the complaint to be filed on Dr. Humphreys at Mount Carmel; another request was filed on March 9, 2017, asking that Moore be served by certified mail at two other addresses, one in Westerville, Ohio, and the other in Centerburg, Ohio. Service was completed by a process server on March 10, 2017, and by certified mail on March 14, 2017. See Doc. #186 and Doc. #221.

{¶ 14} Dr. Humphrey and COA filed another motion for summary judgment on March 8, 2017, contending that Moore had engaged in the unauthorized practice of law when he filed suit, causing the complaint to be a nullity. Like Mount Carmel, Dr. Humphrey and COA argued that this meant that Moore had failed to file an action within the appropriate limitations period. On March 13, 2017, Dr. Humphreys and COA filed an additional motion for summary judgment based on the same grounds previously asserted, and added a contention that Moore failed to give them sufficient notice to extend the statute of limitations for medical malpractice actions.

{¶ 15} Moore filed responses to the motions for summary judgment and also asked the court for a continuance to conduct additional discovery.

{¶ 16} After further memoranda were filed, the trial court issued a decision on September 26, 2017, granting Appellees' motions for summary judgment and dismissing

the case with prejudice. The court concluded that service was not properly made on Dr. Humphreys until March 2017, and that the savings statute in R.C. 2305.19 did not apply.

**{¶ 17}** Additionally, the court held that Mount Carmel could not be held liable because Dr. Humphreys was not an employee and the expiration of the statute of limitations against Dr. Humphreys extinguished any secondary liability of the hospital.

**{¶ 18}** Finally, the court rejected Moore's claims against COA on two grounds. The first ground was that if no action could be maintained against Dr. Humphreys, COA would not be liable on the basis of respondeat superior. The court's second ground was that, even if claims could be brought against an employer for the acts of traditional employees who had been dismissed from an action under the statute of limitations, Dr. Humphrey was a part-owner of COA rather than a traditional employee.

**{¶ 19}** In view of these conclusions, the trial court concluded that the remaining matters raised in the Appellees' motions were moot. Moore timely appealed from the judgment dismissing his action.

## II. Application of the Savings Statute

**{¶ 20}** Moore's First Assignment of Error states that:

> The Trial Court Erred by Failing to Apply the Savings Statute When the Original Complaint Failed Otherwise Than on the Merits and the Request for Service Acted as a Refiling of the Complaint Within One Year of the Failure Other Than on the Merits.

**{¶ 21}** Under this assignment of error, Moore contends that the alleged failure to perfect service within one year on Dr. Humphreys, even if true, would have resulted in a

dismissal other than on the merits. Moore further contends that under prevailing law, his request for service on Dr. Humphreys in March 2017 was effectively a dismissal and refiling of the complaint as permitted under the Ohio Savings Statute, which preserves a plaintiff's cause of action when the plaintiff files a complaint and attempts to commence an action by demanding service within one year. According to Moore, the trial court, therefore, erred in awarding summary judgment to Dr. Humphreys.

{¶ 22} "Under Civ.R. 56, summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing left to try. * * * It must be awarded with caution, resolving any doubts and construing all the evidence against the moving party. * * * It should be granted only when there is no genuine issue of material fact to be tried, when the moving party is entitled to judgment as a matter of law, and when it appears that reasonable minds can only reach an adverse conclusion regarding the nonmoving party's case." *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107, 614 N.E.2d 765 (10th Dist.1992), citing *Harless v. Willis Day Warehouse Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). In reviewing trial court decisions granting summary judgment, appellate courts apply the same standards. *Id.*

{¶ 23} In dismissing the action with prejudice, the trial court did not consider any arguments concerning whether Moore had capacity to bring suit. The court also did not consider any actual statute of limitations issues such as whether Moore had properly provided the required 180-day notice of litigation. Both these arguments had been made in connection with the motions for summary judgment. Instead, the trial court referenced the statute of limitations only in connection with its conclusion about the alleged failure of service on Dr. Humphreys.

**{¶ 24}** In this regard, the trial court concluded that Moore failed to perfect service on Dr. Humphreys within one year of the filing of the complaint. The court also rejected Moore's argument that under *Goolsby v. Anderson Concrete Corp.*, 61 Ohio St.3d 549, 575 N.E.2d 801 (1991), and other cases, Moore's request for service on Dr. Moore in March 2017 resulted in a dismissal of the complaint and refiling pursuant to R.C. 2305.19. The trial court concluded that *Goolsby* was inapplicable because "[t]he courts have only applied the *Goolsby* holding where the initial attempt at service was ordered at the time of the filing of the complaint and the next attempt at service happened before the statute of limitations had run." Decision and Final Judgment Entry, Doc. #305, p. 9.

**{¶ 25}** Referencing two decisions of the Tenth District Court of Appeals [*Moh v. Anderson*, 10th Dist. Franklin No. 96APE06-724, 1996 WL 715471 (Dec. 12, 1996), and *Sheets v. Sasfy*, 10th Dist. Franklin No. 98AP-539, 1999 WL 35382 (Jan 26. 1999)], the trial court further stated that:

Similar to *Moh* and *Sheets*, Mr. Moore filed this complaint and originally requested service only one day before the statute of limitations expired on July 7, 2015. At the time the one-year period for service under Rule 3 expired, the statute of limitations had long run. During the one-year period under Rule 3(A), there was never a dismissal without prejudice and refiling, or filing of a brand-new instruction to the clerk to serve the doctor at a different address. Only months later did plaintiff seek and complete residence service on Dr. Humphreys on March 11, 2017. *Goolsby* and the savings statute do not apply. The failure to perfect service under Rule 3(A) or to dismiss and re-file within one year resulted in a failure to commence

the action against Dr. Humphrey and nothing extended the life of the case. The second request to the clerk to serve the doctor in March 2017 was, effectively, a second dismissal and ended the case against him.

Dr. Humphreys is dismissed with prejudice because plaintiff's claims against him are barred by the statute of limitations.

Doc. #305 at p. 10.

{¶ 26} This decision on the "statute of limitations," in turn, led to the trial court's grant of summary judgment to Mount Carmel and COA. However, the trial court's statement about the need to dismiss and refile within the one-year service period in order to be able to use the savings statute was incorrect. The court's statement that Moore's instruction to the clerk in March 2017 was a "second dismissal" of the action was also incorrect. Whether these errors require reversal depends on whether the dismissal of the complaint was otherwise appropriate.

{¶ 27} R.C. 2305.19(A) provides, in pertinent part, that:

In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff * * * may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

{¶ 28} The Tenth District Court of Appeals has held that due to amendments to R.C. 2305.17 and the inclusion of "attempt to commence" in R.C. 2305.19, the term "attempted to be commenced" as "used in R.C. 2305.19, has a meaning other than

commencement itself." *Shanahorn v. Sparks*, 10th Dist. Franklin No. 99AP-1340, 2000 WL 861261, *4 (June 29, 2000). As a result, the court overruled *Branscom v. Birtcher*, 55 Ohio App.3d 242, 563 N.E.2d 731 (10th Dist. 1988), and *Stahl v. Mack,* 10th Dist. Franklin No. 96APE08-1067 (Apr. 10, 1997), to the extent they provided otherwise. *Id.* at *6.

{¶ 29} The Tenth District, therefore, has held that "an attempt to commence within the meaning of R.C. 2305.19 requires only that a plaintiff has taken action to effect service on a defendant within the applicable statue [sic] of limitations." *Id.* at *5, citing *Schneider v. Steinbrunner*, 2d Dist. Montgomery No. 15257, 1995 WL 737480, *11 (Nov. 8, 1995). The court also noted that there is no requirement of due diligence for an attempt to commence an action. *Id.* All that is required is that the plaintiff attempt to commence the action and that the plaintiff fail otherwise than on the merits.

{¶ 30} As an example, the date of the accident in *Shanahorn* was April 22, 1995. The plaintiff initially filed a complaint on January 24, 1997, and attempted service on the defendant within one year, but was unsuccessful. The plaintiff then dismissed the action in March 1998 and refiled on November 25, 1998. *Id.* at *1. In the second action, the defendant moved to dismiss the negligence claim because it was not filed within the two-year limitations period. The defendant asserted that the plaintiff could not avail herself of the savings statute because she failed to serve him within a year after the first complaint was filed. *Id.* After the trial court granted the defendant's motion to dismiss, the plaintiff appealed, and the court of appeals reversed, noting, as was indicated, that the plaintiff was not required to commence the action within the one-year service period, but was only required to attempt to commence the action. *Id.* at *4-6.

{¶ 31} Consequently, the trial court was incorrect when it said that Moore was required to dismiss and refile his action within the one-year service period or be barred from refiling because the statute of limitations had expired. The limitations period in *Shanahorn* expired on April 22, 1997, and the defendant was not served within the one-year service period following the filing of the original action on January 24, 1997. In addition, the action was refiled in November 1998, which was also not within the one-year service period, which had ended in January 1998.

{¶ 32} *Schneider* involved similar facts. In that case, an automobile accident occurred on May 20, 1991, and the plaintiff filed suit on May 20, 1993. Plaintiff was unable to obtain service on the defendants, and the trial court dismissed the case, without prejudice, in January 1994. At that point, the statute of limitations had expired. *Schneider*, 2d Dist. Montgomery No. 15257, 1995 WL 737480, at *1. Notably, the plaintiff made only one attempt at service, which was returned shortly after suit was filed, marked " 'Reason for failure unknown.' " *Id*. The plaintiff then refiled in November 1994 and the defendant filed a motion for summary judgment because the action had not been filed within two years after the claim arose. Agreeing with the defendant, the trial court dismissed the case. *Id.*

{¶ 33} The Second District Court of Appeals reversed the trial court's judgment, stating that:

> We agree that the Plaintiffs could have made better efforts to obtain
> service on Defendant Imwalle. However, R.C. 2305.19 does not impose a
> due diligence requirement upon its attempted commencement alternative.
> Neither does it require a plaintiff whose efforts at service are unsuccessful

to show good cause why service was not made, as Civ.R. 4(E) does. All it does require is a showing that the plaintiff, after filing a complaint, has taken some action provided by the Civil Rules to obtain service on the defendant. That may be done by showing that a valid request for service pursuant to Civ.R. 4.1 was filed with the clerk, as Plaintiffs did here.

* * *

We hold that the *attempted* commencement provision of R.C. 2305.19 requires only that a Plaintiff has taken action to effect service on a defendant within the applicable limitations period according to one of the methods provided in the Civil Rules. Plaintiff Janeen Schneider did that when she requested service on Defendant Imwalle by certified mail on May 20, 1993, when her complaint was filed in Case No. 93-1827. The trial court erred, therefore, when it held that the savings provisions of R.C. 2305.19 do not apply to permit her to refile her complaint within one year after it was dismissed without prejudice.

(Emphasis sic.) *Schneider*, 2d Dist. Montgomery No. 15257, 1995 WL 737480, at *3-4. *Accord, e.g., Rossiter v. Smith*, 9th Dist. Wayne No. 12CA0023, 2012-Ohio-4434, ¶ 13-14; *Sorrell v. Estate of Datko*, 147 Ohio App.3d 319, 2001-Ohio-3460, 770 N.E.2d 608, ¶ 22 (7th Dist.); *Husarcik v. Levy*, 8th Dist. No. 75114, 1999 WL 1024135, *2-3 (Nov. 10, 1999).

{¶ 34} The reasoning of these courts was articulated in *Schneider,* where the court of appeals stated that:

We acknowledge that earlier cases have construed R.C. 2305.19 to

require actual service on a defendant. Those cases have cited and followed the rule of *Mason v. Waters* (1966), 6 Ohio St.2d 212, which held that the filing of a petition and a praecipe for the issuance of a summons does not constitute the commencement of an action or an attempt to commence an action where there has been no effective service of summons on the defendant within the time prescribed. *Mason* was decided on the basis of R.C. 2305.17, the statutory version of Civ.R. 3(A). As it was then in effect, R.C. 2305.17 stated that ". . . an attempt to commence an action is equivalent to its commencement, when the party diligently endeavors to procure a service, if such attempt is followed by service within 60 days." R.C. 2305.17 was amended in 1965, and now provides:

> An action is commenced within the meaning of sections 2305.03 to 2305.22 and sections 1302.98 and 1304.35 of the Revised Code by filing a petition in the office of the clerk of the proper court together with a praecipe demanding that summons issue or an affidavit for service by publication, if service is obtained within one year. (Emphasis added).

The requirement of diligent efforts to obtain service as well as success in obtaining service have been deleted from the revised version of R.C. 2305.17 defining attempted commencement of an action. Therefore, they are no longer incorporated into the meaning of "attempted to be commenced" as that term is used in the savings statute, R.C. 2305.19.

The decision in *Mason* has been modified to that extent. The other cases cited by Defendant Imwalle in support of her position are generally distinguishable in that they either rely on *Mason* and the earlier version of R.C. 2305.17 or do not address directly the meaning of an attempted commencement of an action for purposes of the savings statute.

*Schneider*, 2d Dist. Montgomery No. 15257, 1995 WL 737480, at *4. *Accord, e.g.*, *Shanahorn*, 10th Dist. Franklin No. 99AP-1340, 2000 WL 861261, at *4-5.

{¶ 35} The Second District Court of Appeals also relied on *Goolsby*, stating that:

Support for our view is provided by *Goolsby v. Anderson Concrete Corporation* (1991), 61 Ohio St.3d 549, which held that an instruction to serve a complaint in an original action after the statute of limitations period has expired amounts to re-filing of that action for purposes of R.C. 2305.19. If that instruction creates a re-filing, it reasonably also constitutes an attempt to commence the original action for purposes of R.C. 2305.19. Both interpretations conform to the basic purposes of the Civil Rules, which is "to effect just results by eliminating delay, unnecessary expenses and all other impediments to the expeditious administration of justice." Civ.R. 1(B).

*Schneider* at *4.

{¶ 36} In *Shanahorn*, the Tenth District Court of Appeals also noted that its conclusions were supported by the recent decision of the Supreme Court of Ohio in *Thomas v. Freeman*, 79 Ohio St.3d 221, 680 N.E.2d 997 (1997). *Shanahorn* at *5. *Accord Amos v. McDonald's Restaurant*, 4th Dist. Hocking No. 04CA3, 2004-Ohio-5762, ¶ 11 (noting that "the majority of courts interpret *Thomas* to provide that the saving statute

applies to preserve a plaintiff's cause of action even if the plaintiff fails to perfect service within one year of filing the complaint").

{¶ 37} In *Thomas*, the automobile accident in question occurred on December 22, 1989. *Thomas v. Freeman*, 9th Dist. Summit No. 17247, 1995 WL 679268, *1. The plaintiff filed a negligence action on December 23, 1991, but service on the defendant failed. *Thomas*, 79 Ohio St.3d at 221, 680 N.E.2d 997. The case was dismissed for lack of prosecution in July 1992 because the plaintiff failed to respond to the trial court's show cause order. *Id.* After the plaintiff re-filed the action on July 8, 1993, using the savings statute, service again failed, and the trial court issued a show cause order in January 1994. After the plaintiff again failed to respond, the court dismissed the case in February 1994 for lack of prosecution, without prejudice. *Id.* On July 7, 1994, the plaintiff filed a motion to vacate the February 11, 1994 dismissal; the trial court granted the motion and reinstated the case. *Id.*

{¶ 38} Service was then acquired on the defendant, who filed a motion for summary judgment, contending that the first dismissal was an adjudication on the merits and that the plaintiff, therefore, could not take advantage of R.C. 2305.19. *Id.* at 223. The trial court granted the motion, and the court of appeals affirmed, holding that the trial court's first dismissal "was not for failure of service pursuant to Civ.R. 4(E) or for lack of jurisdiction pursuant to Civ.R. 41(B)(4), but was for a lack of prosecution, and since the dismissal did not state otherwise, it was with prejudice under Civ.R. 41(B)(3)." *Id.* Consequently, the court of appeals held that the plaintiff could not use R.C. 2305.19 to refile her complaint. *Id.*

{¶ 39} On appeal, the Supreme Court of Ohio disagreed. First, the court noted

that "Civ.R. 41(B) appears to give the court two alternatives as to the effect of a dismissal of a case where a defendant has not been served, whatever the reason. However, Civ.R. 41(B)(3) is more general than Civ.R. 41(B)(4). Therefore, applying the maxim *expressio unius est exclusio alterius* to the case at bar provides guidance as to whether [the plaintiff's] case should have been dismissed on the merits (Civ.R. 41[B][3]) or otherwise than on the merits (Civ.R. 41[B][4])." (Emphasis sic.) *Id.* at 224. According to the court, "[u]nder this maxim, 'if a statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded.'" *Id.*, quoting Black's Law Dictionary 581 (6th Ed.1990).

{¶ 40} The court then stated that:

Having determined that where a defendant has not been served, a court does not have jurisdiction over the defendant, we find, in applying the maxim *expressio unius est exclusio alterius,* ["the expression of one thing is the exclusion of the other,"] that such a dismissal would be *otherwise than on the merits* pursuant to Civ.R. 41(B)(4) to the exclusion of Civ.R. 41(B)(3) (adjudication on the merits) despite the fact that a trial court's entry may be silent on the issue. This is because Civ.R. 41(B)(4) provides an exception to the general rule that an entry dismissing a case pursuant to Civ.R. 41(B) that does not indicate otherwise is an adjudication on the merits. Civ.R. 41(B)(3). In other words, where a case is dismissed because the court did not have jurisdiction, such as in this case where service has not been perfected, *the dismissal is always otherwise than on the merits.* Therefore, Civ.R. 41(B)(4) is the controlling subsection.

(Emphasis added.) *Thomas*, 79 Ohio St.3d at 225, 680 N.E.2d 997.

{¶ 41} The Supreme Court of Ohio further reconciled Civ.R. 4(E), which allows dismissal without prejudice for failure to make service within six months, with Civ.R. 41(B)(1), which allows courts to dismiss an action or claim where the plaintiff fails to prosecute or comply with the Civil Rules or any court order. *Id.* at 225. The court commented that "[b]oth Civ.R. 4(E) and 41(B)(1) provide the *authority* for a court, on its own initiative, or on motion by a party, to dismiss the plaintiff's case. Therefore, Civ.R. 41(B)(1) and 4(E) should be read *in pari materia*. Civ.R. 41(B)(4) provides the *effect* of this type of dismissal." (Emphasis sic.). *Id.* at 226. Accordingly, the court held that "in reconciling the two rules, where the facts indicate that a plaintiff has not acquired service on the defendant, the court may characterize its dismissal as a failure to prosecute pursuant to Civ.R. 41(B)(1), or as a failure to obtain service under Civ.R. 4(E), but the dismissal under either rule will be *otherwise than on the merits* under Civ.R. 41(B)(4)." (Emphasis added.) *Id.*

{¶ 42} In view of the preceding discussion, Moore's request for service in March 2017, whether effective or not, was not a "second dismissal," because the case had not been previously dismissed by court order or on motion by any party. Thus, the trial court's characterization of the request for service as a "second dismissal" was also incorrect.

{¶ 43} The issue is whether, despite these flaws in the court's reasoning, the case was properly dismissed for lack of personal jurisdiction or whether Moore's request for service in March 2017 constituted a dismissal and "refiling" under *Goolsby* and other cases.

**{¶ 44}** As pertinent here, the plaintiff has the "duty to accomplish proper service on a defendant. * * * If a plaintiff follows the civil rules governing service of process, a rebuttable presumption of proper service arises." *Chuang Dev. LLC v. Raina*, 2017-Ohio-3000, 91 N.E.3d 230, ¶ 31 (10th Dist.). However, this presumption can be rebutted if the defendant provides sufficient evidence that service was not accomplished. *Id.* at ¶ 32.

**{¶ 45}** There are no disputed facts regarding whether service was obtained on Dr. Humphreys within one year after the complaint was filed. The evidence submitted in the trial court revealed that the complaint was sent by certified mail to Dr. Humphreys at the address for Mount Carmel, and was accepted on July 16, 2015. Thus, an initial presumption of proper service arose.

**{¶ 46}** However, "service is not accomplished if the plaintiff fails to direct the summons and complaint to the defendant's residence or to an address where the plaintiff could reasonably expect that the summons and complaint would be delivered to the defendant." *Erin Capital Mgt., L.L.C. v. Fournier*, 10th Dist. Franklin No. 11AP-483, 2012-Ohio-939, ¶ 19, citing *Grant v. Ivy*, 69 Ohio App.2d 40, 42, 429 N.E.2d 1188 (10th Dist.). In addition, "service fails where the defendant does not receive the summons and complaint, even though the plaintiff complied with the civil rules and service was made at an address where the plaintiff could reasonably anticipate that the defendant would receive it." *Id.*

**{¶ 47}** The evidence was undisputed that the individual who signed for the certified mail service at Mount Carmel had no relationship to either Dr. Humphreys or COA. Furthermore, Dr. Humphreys retired from the practice of medicine in late December 2014,

due to surgery in August 2014 that disabled him from safely conducting anesthesia. The contract for anesthesia services between COA and Mount Carmel also terminated on January 1, 2015, and Dr. Humphreys's privileges with Mount Carmel were terminated on that date as well. All these actions occurred prior to the time that Moore requested service on Dr. Humphreys at Mount Carmel's address. Inquiry to the hospital or COA could have revealed these facts.

{¶ 48} Furthermore, Dr. Humphreys's affidavit indicated that each biennial report of COA that was filed with the Secretary of State since 2002 had listed Dr. Humphrey's home address as 6035 Worthington Road, Westerville, Ohio 43082. *See, e.g.,* Doc. #161 (Ex. 2), Affidavit of Dr. Humphreys, ¶ 4. As a result, service was not directed to a place where Moore would have reasonably anticipated it would be delivered to Dr. Humphreys.

{¶ 49} Even if this were otherwise, there was also no evidence that Dr. Humphreys actually received service of the complaint. Dr. Humphreys denied receiving it, and Moore failed to present evidence indicating otherwise. It is true that Dr. Humphreys filed an answer and participated in the litigation. However, his answer, which was filed on July 30, 2015, raised the defense of insufficiency of process and/or insufficiency of service of process. *See* Doc. #50, ¶ 15. The Supreme Court of Ohio has held that the defense of insufficiency of service of process is not waived when a party actively participates in litigating a case. *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714, ¶ 11. *See also Carter v. St. Ann's Hosp.*, 10th Dist. Franklin No. 11AP-715, 2012-Ohio-1662, ¶ 28.

{¶ 50} Moore argues, however, that even if he failed to properly serve Dr.

Humphreys, his action was preserved. In connection with this argument, Moore contends: (1) that he attempted to commence his action by requesting service on Dr. Humphreys; (2) that a dismissal for lack of personal jurisdiction is a dismissal other than on the merits; (3) that the case was effectively dismissed other than on the merits and refiled when Moore filed instructions with the clerk for service on March 2, 2017; and (4) Dr. Humphreys was served within one year after the failure otherwise on the merits, even though that was after the statute of limitations had expired. As support, Moore relies on *Goolsby*, 61 Ohio St.3d 549, 575 N.E.2d 801, and other cases which have held that an instruction for service or filing an amended complaint are, in effect, a notice dismissal and refiling of the complaint.

{¶ 51} As was noted, the trial court rejected Moore's argument, concluding that courts have held that *Goolsby* only applies where the initial attempt at service was ordered when the complaint was filed and the next service attempt occurs before the statute of limitations has run. Doc. #305 at p. 9. This is not entirely accurate.

{¶ 52} In *Goolsby*, the Supreme Court of Ohio held that:

When service has not been obtained within one year of filing a complaint, and the subsequent refiling of an identical complaint within rule would provide an additional year within which to obtain service and commence an action under Civ. R. 3(A), an instruction to the clerk to attempt service on the complaint will be equivalent to a refiling of the complaint.

*Goolsby* at syllabus.

{¶ 53} The plaintiff in *Goolsby* had filed a personal injury action about seven

months after an accident occurred, but instructed the clerk not to serve the defendant. Two days before the two-year statute of limitations expired, the plaintiff instructed the clerk to issue a summons, and service was obtained several days after the limitations period expired. *Id.* at 549. The plaintiff then dismissed the case with the court's consent under Civ.R. 41(A)(2), and refiled under the savings statute. At that point, the defendant moved for dismissal because the original complaint had not been served within one year of filing. The trial court agreed, finding that the original action had not been commenced and was a nullity, making the savings statute inapplicable. *Id.* at 550.

{¶ 54} On appeal, the Supreme Court of Ohio disagreed. The court commented that:

One clear consequence of Civ.R. 3(A) is that it is not necessary to obtain service upon a defendant within the limitations period, which, in this case, was a period of two years under R.C. 2305.10. A plaintiff could therefore file a complaint on the last day of the limitations period and have a full year beyond that date within which to obtain service.

In the case at bar, Goolsby filed her first complaint on February 6, 1986, less than seven months after the date of the accident. However, it was not until July 17, 1987 that the clerk was instructed to effect service, two days prior to the expiration of the statutory period for bringing the action. Service was obtained six days later.

A purely technical application of Civ.R. 3(A) would result in a finding that Goolsby had not commenced her action, despite the fact that the first complaint was filed and a demand for service was made within the

limitations period prescribed by statute. Yet, it is not disputed that had Goolsby dismissed her complaint and again filed it at the time instructions for service were given, the action would have been commenced according to Civ.R. 3(A). We believe that under these circumstances the Civil Rules should not require a plaintiff to refile a complaint identical to one which has previously been, and remains, filed. Such an exercise could not be said to "effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Civ.R. 1(B). Consequently, we hold that when service has not been obtained within one year of filing a complaint, and the subsequent refiling of an identical complaint within rule would provide an additional year within which to obtain service and commence an action under Civ.R. 3(A), an instruction to the clerk to attempt service on the complaint will be equivalent to a refiling of the complaint.

*Goolsby*, 61 Ohio St.3d at 550–51, 575 N.E.2d 801.

{¶ 55} It is true that *Goolsby* involved a request for service within the limitations period. However, the fact is that service was made after the one-year service limitation in Civ.R. 3(A) had expired. In addition, *Goolsby* was issued in 1991, well before the court's 1997 decision in *Thomas,* 79 Ohio St.3d 221, 680 N.E.2d 997. It was also decided prior to the lower court decisions concluding that an attempt to commence, rather than actual commencement of an action is sufficient to invoke the savings statute. Thus, under current authority, including *Thomas*, the plaintiff in *Goolsby* could have refiled even if she failed to "commence" her action under Civ.R. 3(A), and even if the statute of

limitations had expired before the action failed otherwise than on the merits.   As a result, the Supreme Court of Ohio did not need to fashion the remedy of construing a request for service as a refiling.   The court also did not consider the issue of "attempted commencement" in *Goolsby*.

**{¶ 56}** In *Shanahorn*, the Tenth District Court of Appeals included a detailed discussion of prior Supreme Court authority, which had held that "an action is commenced or attempted to be commenced only if effective service of process is obtained." *Shanahorn*, 10th Dist. Franklin No. 99AP-1340, 2000 WL 861261, *3, discussing *Lash v. Miller*, 50 Ohio St.2d 63, 64-65, 362 N.E.2d 642 (1977).   The Tenth District Court of Appeals commented that:

> If one reads *Lash*, however, it is clear that the basis for the holding therein with regard to the meaning of "attempt to commence" is no longer the law in Ohio.   The sole issue in *Lash* was whether or not the action had been commenced pursuant to Civ.R. 3(A).   The savings statute was not implicated in *Lash*.   The Supreme Court indicated that under Civ.R. 3(A), an action is commenced by filing a complaint and obtaining service within one year therefrom.   [*Lash*] at 64, 362 N.E.2d 642.   The Supreme Court also cited *Mason v. Waters* (1966), 6 Ohio St.2d 212, 217 N.E.2d 213, paragraph one of the syllabus, wherein the Supreme Court held that within the meaning of R.C. 2305.17, *as it read prior to its amendment in 1965*, the filing of a petition and praecipe for the issuance of summons does not constitute the commencement of or the attempt to commence an action where there has been no effective service of summons upon the defendant

within the time prescribed by that statute. *Lash* at 64, 362 N.E.2d 642. (Emphasis sic.) *Shanahorn* at *3.

{¶ 57} The Tenth District then discussed current R.C. 2305.17, which, after amendment, lacked the language relied upon in *Mason,* which in turn had been relied on by *Lash.* In this regard, the court commented that;

> Notably absent from the current R.C. 2305.17 is the language relied upon by *Mason*, which was relied upon [in] *Lash*, *Branscom* [*v. Birtcher*, 55 Ohio App.3d 242, 563 N.E.2d 731 (1988)] and *Stahl* [*v. Mack*, 10th Dist. Franklin No. 96APE08-1067 (April 10, 1997)], that an attempt to commence is equivalent to its commencement when a party diligently endeavors to procure service and such attempt is followed by service within sixty days. Hence, there is no longer a definition of "attempted to be commenced" as such is used in R.C. 2305.19. The fact that the legislature amended R.C. 2305.17 to exclude this definition of attempt to commence, coupled with the fact that R.C. 2305.19 includes not only a commencement but also an attempt to commence within its purview, leads this court to conclude that "attempted to be commenced," as such is used in R.C. 2305.19, has a meaning other than commencement itself.

*Shanahorn* at *4. As was mentioned above, the Tenth District also relied on the decision in *Thomas*, 79 Ohio St.3d 221, 680 N.E.2d 997.

{¶ 58} In rejecting Moore's attempt to apply *Goolsby*, the trial court likened Moore's case to two cases in the Tenth District Court of Appeals – *Moh*, 10th Dist. Franklin No. 96APE06-724, 1996 WL 715471, and *Sheets*, 10th Dist. Franklin No. 98AP-539, 1999

WL 35382.   Notably, both these decisions were decided prior to *Shanahorn.*

{¶ 59} In *Moh*, the plaintiff had filed an action along with a request for service, and when service was unsuccessful, filed new instructions for service one day before the one-year service period ended.   Although service was perfected shortly thereafter, the trial court dismissed the complaint.   *Id.* at *1.

{¶ 60} On appeal, the Tenth District affirmed, holding that the dismissal was appropriate because the Civil Rules require that a lawsuit be commenced through obtaining service of process within a year.   *Id.*   The court also rejected the plaintiff's request to apply *Goolsby*, noting that even if the lawsuit had been deemed filed on the second date on which the plaintiff requested service of process, the complaint would have been filed outside the statute of limitations.   *Id.* at *2.   In contrast, according to the court, *Goolsby's* underlying rationale "was that nothing was gained by forcing a plaintiff to dismiss one lawsuit and file a new lawsuit which could be filed within the pertinent statute of limitations."   *Id.*   The court also stated that the trial court's failure to indicate whether the dismissal was with or without prejudice was irrelevant because "[n]o lawsuit was commenced within the two-year period allowed by the pertinent statute of limitations" and "[a]ny subsequent filing based upon the collision is barred by the pertinent statute of limitations."   *Id.*

{¶ 61} *Moh* was issued in 1996, which was before the *Thomas* decision and before the Tenth District's decision in *Shanahorn*, which rejected the court's prior belief that the savings statute applied only where an action had been "commenced," not where a party had "attempted" to commence an action.   *Shanahorn*, 10th Dist. Franklin No. 99AP-1340, 2000 WL 861261, at *4.   As a result, the court's comments in *Moh* about the action

being barred are no longer correct.

{¶ 62} *Sheets* presented facts similar to those in *Moh*, and the Tenth District again rejected *Goolsby's* application because the instructions for service were not filed until nearly one year after the statute of limitations expired. *Sheets*, 10th Dist. Franklin No. 98AP-539, 1999 WL 35382, at *2. Although *Sheets* was decided after *Thomas*, the court did not consider *Thomas*, nor does the decision indicate whether the trial court's dismissal was with or without prejudice. In any event, *Shanahorn* was decided a year later and indicated that for purposes of R.C. 2305.19, an action does not have to be "commenced"; a plaintiff need only attempt to commence an action, and failure to perfect service within the one-year period does not preclude refiling.

{¶ 63} The Supreme Court of Ohio has cited *Lash* only once since it was decided, and other courts have concluded, as did the Tenth District Court of Appeals, that the concepts of commence and attempt to commence are no longer deemed to be the same. *See, e.g., Schneider*, 2d Dist. Montgomery No. 15257, 1995 WL 737480, at *3-4; *Sorrell*, 147 Ohio App.3d 319, 2001-Ohio-3460, 770 N.E.2d 608, at ¶ 17-22.

{¶ 64} All of this is not to say that *Goolsby* necessarily applies to the case before us; we simply note that the law has changed since both *Moh* and *Sheets* were decided, and the trial court's reliance on these cases was misplaced.

{¶ 65} As to decisions occurring after *Thomas* and *Goolsby*, the Supreme Court of Ohio stated in *LaNeve v. Atlas Recycling, Inc.*, 119 Ohio St.3d 324, 2008-Ohio-3921, 894 N.E.2d 25 (without discussing its prior decisions) that "[i]n appropriate circumstances, the saving statute of R.C. 2305.19(A) allows an original action that has either been properly commenced or "*attempted to be commenced*" to be voluntarily dismissed and then refiled

or replaced with an amended complaint against the same defendant based on the same injury, even if the applicable statute of limitations has expired at the time of the refiling." (Emphasis added.) *Id.* at ¶ 13. This recognizes the correctness of the approach of *Thomas* and the decisions of most appellate districts.

{¶ 66} The Supreme Court of Ohio has not further discussed *Thomas* in relevant situations, other than a brief citation in *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, where the court stated that "[a] dismissal with prejudice operates as an adjudication on the merits. * * * It is axiomatic, then, that a dismissal otherwise than on the merits should be without prejudice." *Id.* at ¶ 16, citing *Thomas*, 79 Ohio St.3d at 225, 680 N.E.2d 997, fn. 2. In *Fletcher*, the court held that dismissal of complaints for failure to file Civ.R. 10(D) affidavits is not on the merits of the claim, but is based on the sufficiency of the complaint; the adjudication, therefore, is otherwise than on the merits and is without prejudice. *Id.* at ¶ 18.

{¶ 67} In 2009, the Supreme Court of Ohio did construe and apply *Goolsby* in a case involving the issue of whether a second dismissal of a claim was prejudicial. *See Sisk & Assoc., Inc. v. Commt. to Elect Timothy Grendell*, 123 Ohio St.3d 447, 2009-Ohio-5591, 917 N.E.2d 271. This is a case that Moore has also relied on in contending that his request for service on March 2, 2017, constituted a refiling of the complaint.

{¶ 68} In *Sisk*, the plaintiff filed a complaint for breach of contract on September 23, 2004, failed to obtain service within one year, and voluntarily dismissed the action. *Id.* at ¶ 2.[1] The claim was refiled on October 19, 2005, and an amended complaint was

---

[1] The decisions of the Ohio Supreme Court and the lower court do not indicate when the parties entered into the contract or when a breach occurred. *Sisk & Assoc., Inc. v. Commt. to Elect Grendell*, 10th Dist. Franklin No. 07AP-1002, 2008-Ohio-2342, *rev'd*, 123 Ohio

filed on February 3, 2006. However, the plaintiff did not obtain service within one year of October 19, 2005; instead, the plaintiff asked the clerk, on March 26, 2007, to serve the defendant. Due to the service failure, the trial court dismissed the refiled action without prejudice. *Id.* The court of appeals affirmed the dismissal without prejudice, stating that a dismissal for lack of personal jurisdiction would always be other than on the merits. *Id.* at ¶ 3.

{¶ 69} On further appeal, the Supreme Court of Ohio disagreed. The court observed that if the plaintiff had voluntarily dismissed the case, the second dismissal would have been with prejudice. *Id.* at ¶ 6, citing Civ.R. 41(A)(1)(a) and *Olynyk v. Scoles*, 114 Ohio St.3d 56, 2007-Ohio-2878, 868 N.E.2d 254, syllabus. The court noted that:

But the second dismissal was not voluntary; it was involuntary, pursuant to Civ.R. 41(B)(1), because Sisk failed to comply with Civ.R. 3(A). Accordingly, Civ.R. 41(B)(3) applies; it provides that an involuntary dismissal "operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." The trial court specified that the dismissal was without prejudice.

Because the trial court involuntarily dismissed the complaint, but without prejudice, the dismissal is, according to Civ.R. (B)(3), other than on the merits. But the situation thereby created is clearly incompatible with the purpose of Civ.R. 3(A), which is "to promote the prompt and orderly resolution of litigation." * * * Furthermore, allowing the dismissal to be

---

St.3d 447, 2009-Ohio-5591, 917 N.E.2d 271. One might assume that the statute of limitations had not expired, but whether this is true is not apparent from the decisions.

without prejudice would grant Sisk a better result from an involuntary dismissal than from a voluntary dismissal.

*Sisk*, 123 Ohio St.3d 447, 2009-Ohio-5591, 917 N.E.2d 271, at ¶ 6-7.

{¶ 70} In order to avoid this inequitable state of affairs, the court concluded that:

We are persuaded that the just approach is to assume, as we did in *Goolsby v. Anderson Concrete Corp.* (1991), 61 Ohio St.3d 549, 551, 575 N.E.2d 801, that an instruction to the clerk of courts to attempt service outside the one-year period in Civ.R. 3(A) is "equivalent to a refiling of the complaint." *Id.* at syllabus. The attempt to serve the second complaint more than one year after it was filed is equivalent, then, to a refiling of the complaint, which necessarily implies that the second complaint had been dismissed by notice, as in *Goolsby*. Unlike the plaintiff in *Goolsby*, however, Sisk has already dismissed his claim once. The subsequent notice dismissal, even if implied, therefore "operates as an adjudication upon the merits." Civ.R. 41(A)(1); *Olynyk*, 114 Ohio St.3d at 59, 868 N.E.2d 254. *See Schafer* [*v. Sunsports Surf Co., Inc.*], 2006-Ohio-6002, 2006 WL 3291160, at ¶ 15 (construing *Goolsby*, in a case very similar to this one, and concluding that "a second voluntary dismissal (necessary in order to refile) would have resulted in an adjudication upon the merits of his claims").

Therefore, we hold that when a plaintiff files an instruction for a clerk to attempt service of a complaint that was filed more than a year prior, the instruction, *by operation of law*, is a notice dismissal of the claims, and if the

plaintiff had previously filed a notice dismissing a complaint making the same claim, the instruction, *by operation of law*, is a second notice dismissal, resulting in dismissal with prejudice of the claims. We reverse the judgment of the court of appeals.

(Emphasis added). *Id.* at ¶ 8-9.

**{¶ 71}** The trial court did not address *Sisk*, other than to mention the Supreme Court's statement that an extension of time to perfect service cannot "be granted after the one-year limitations period for commencement of an action as required by Civ.R. 3(A) has run." Doc. # 350 at p. 9, citing *Sisk* at ¶ 5. The Supreme Court of Ohio made this comment in the context of stressing that Civ.R. 3(A) is intended to promote prompt and orderly resolution of cases and to prevent clogging of court dockets. *Sisk* at ¶ 5. However, based on the widespread view of the savings statute as authorizing refiling of cases where commencement of an action has been attempted within the one-year time limit of Civ.R. 3(A), it seems clear that using a service request as a substitution for dismissal and refiling is not the same as granting an extension of time to perfect service under Civ.R. 3(A).

**{¶ 72}** The Supreme Court of Ohio used broad language in *Sisk*, stating that "an instruction for a clerk to attempt service of a complaint that was filed more than a year prior, the instruction, by operation of law, is a notice dismissal of the claims." *Id.* at ¶ 9.

**{¶ 73}** Only a few cases have cited *Sisk*, and only one involves a situation comparable to the case before us. In *Waite v. Mahalaxmi, Inc.*, 2012-Ohio-15, 969 N.E.2d 306 (5th Dist.), the plaintiff filed a negligence action against the defendant on October 7, 2009, and requested service by certified mail on the same day. After the

certified mail was unclaimed, the plaintiff issued a praecipe to the clerk of courts for certified mail service again on April 13, 2010. This service was also not perfected. After the one-year period for service had expired, the plaintiff asked for service on the defendant by ordinary mail. *Id*. at ¶ 4.

{¶ 74} The defendant filed a motion to dismiss on February 2, 2011, contending that the plaintiff failed to commence suit within the applicable statute of limitations because she failed to obtain service and commence the action within one year of filing the complaint. *Id*. at ¶ 5. The trial court found that the praecipe for ordinary service on October 14, 2010 (which occurred after the one-year service period) was the equivalent of dismissing and refiling the action under *Goolsby*. However, the court concluded, like the trial court in the case before us, that the savings statute did not allow the plaintiff to refile her complaint because "the refiling did not occur during the statute of limitations or within one year of the filing date." *Id.*

{¶ 75} The Fifth District Court of Appeals disagreed. First, the court discussed both *Goolsby* and *Sisk*, noting that both cases allowed a new instruction for service or a new praecipe to constitute a voluntary dismissal and refiling of a complaint. *Id*. at ¶ 7-10. Next, after commenting that the situation was complicated by the savings statute, the court discussed *Thomas* as well as an Eighth District case, which had "concluded that after *Thomas*, the applicability of R.C. 2305.19 is not limited only to circumstances where effective service of process has been obtained. Rather, by its express language, the savings statute also applies where there has been an attempt to commence an action." *Waite*, 2012-Ohio-15, 969 N.E.2d 306, at ¶ 13, citing *Abel v. Safety First Industries, Inc.*, 8th Dist. Cuyahoga No. 80550, 2002-Ohio-6482, ¶ 42.

{¶ 76} The Fifth District Court of Appeals then stated that:

> In the case before us, the record shows that appellant attempted service with the filing of the complaint. Appellant should not be in a worse situation than the plaintiff in *Goolsby*, because she actively attempted to pursue her claim. After the initial failure of service, appellant made further attempts to serve the complaint during the year following the filing. We conclude that she "attempted to commence" the action by filing her complaint and her original praecipe for service within the two year statute of limitations. Because she had attempted to commence her case, the saving statute applies to extend the time for filing past the statute of limitations.

*Waite*, 2012-Ohio-15, 969 N.E.2d 306, at ¶ 15.

{¶ 77} A decision from the Tenth District Court of Appeals in 2012 also implies that the court would consider Moore's request for service to be a dismissal and refiling of the case. *See Carter v. St. Ann's Hosp.*, 10th Dist. Franklin No. 11AP-715, 2012-Ohio-1662. *Carter* involved a situation similar to the case before us, except that it had already been dismissed once. *Id.* at ¶ 3. In November 2009, the estate refiled the wrongful death case and again named a doctor as a defendant. The complaint listed the doctor's address at a location in Arkansas, and after service of process was sent to that address, an individual other than the doctor signed for the certified mail. *Id.* at ¶ 4.

{¶ 78} In December 2009, the doctor filed an answer asserting insufficiency of process and insufficiency of service of process. On the same day the doctor filed his answer, the envelope containing the complaint was returned to the clerk of courts marked

"Return to Sender." However, the complaint was not in the envelope. According to a notation, the doctor did not leave a forwarding address. *Id.* at ¶ 5-6.

**{¶ 79}** The court of appeals noted that the doctor had not been a member of the staff in Arkansas since March 2008. *Id.* at ¶ 7. Between December 21, 2009, and December 7, 2010, the doctor fully participated in the action, including stipulating that discovery from the first action could be used, submitting interrogatories and a request for production of documents to the estate, and providing an initial disclosure of witnesses. *Id.* at ¶ 8-10.

**{¶ 80}** However, about two weeks after the one-year service period expired in the refiled action, the doctor filed a motion to dismiss the lawsuit because the plaintiff had failed to serve him within one year. *Id.* at ¶ 12. After holding an evidentiary hearing on the service issue, a magistrate recommended that the motion to dismiss be granted. The Tenth District Court of Appeals noted that "[t]he magistrate acknowledged that the defense or defenses used here were 'procedural gamesmanship at its best/worst,' but felt compelled by legal precedent to grant the motion." *Id.* at ¶ 18. After the trial court dismissed the doctor from the suit, the plaintiff appealed.

**{¶ 81}** On appeal, the Tenth District Court of Appeal reluctantly affirmed the decision. The court observed that under its prior authority, a defendant waives the defense of lack of personal jurisdiction due to failure of service by participating in the case without objection. However, the court also noted that because of more recent authority indicating that a party's active participation in a case does not waive the defense of insufficiency of service of process, "the gamesmanship mentioned by the magistrate in his decision is now apparently sanctioned." *Id.* at ¶ 25-27.

{¶ 82} Of interest in the current case, however, are the following comments by the court concerning what occurred before the refiled case was dismissed:

> Counsel for the estate in the meantime served Dr. Rubertus and alleged the new service mooted the motion to dismiss. Counsel alleged that since Dr. Rubertus had always been outside the state of Ohio, the statute of limitations had not run. Under case law from the Ohio Supreme Court, the new request for service may be deemed a re-filing of the complaint. However, the Ohio Supreme Court precedent did not address a situation in which a complaint had previously been dismissed. *See Goolsby v. Anderson Concrete Corp.*, 61 Ohio St.3d 549, 575 N.E.2d 801 (1991).

*Id.* at ¶ 19.

{¶ 83} The statement by the Tenth District Court of Appeals is broad and indicates that the court would have allowed the request for service to be deemed a refiling, but for the fact that *Goolsby* had not addressed a double-dismissal situation.[2] Unlike the plaintiff in *Carter*, however, Moore had never dismissed his case before filing the instruction on

---

[2] It is true that *Goolsby* did not address a double-dismissal. However, as was noted above, the Supreme Court of Ohio subsequently held that while an instruction for service outside Civ.R. 3(A)'s one-year period is " 'equivalent to a refiling of the complaint,' " if a plaintiff has already dismissed the claim once, "[t]he subsequent notice dismissal, even if implied, therefore 'operates as an adjudication upon the merits.' " *Sisk*, 123 Ohio St.3d 447, 2009-Ohio-5591, 917 N.E.2d 271, at ¶ 8, quoting Civ.R. 41(A)(1). (Other citations omitted.) The decision in *Sisk* occurred before *Carter* was decided. As a result, even if the notice to serve the doctor in *Carter* would have been considered a dismissal and refiling of the complaint, it was a second dismissal and would have been an adjudication on the merits. Again, this is not the situation before us, as there was no dismissal of Moore's complaint, by court order or otherwise, prior to Moore's request for service on Dr. Humphreys in March 2017.

March 2, 2017, for service on Dr. Humphreys.

{¶ 84} Based on the preceding discussion, we conclude that the trial court erred in dismissing the complaint against Dr. Humphreys. Moore's March 2, 2017 request for service should be construed as a dismissal and refiling, and service was perfected in a short time thereafter on Dr. Humphreys.

{¶ 85} We note that Appellees have cited *Kowalski v. Pong*, 2d Dist. Montgomery No. 27577, 2017-Ohio-9310, as a very recent example of the "correct" statement of the law, i.e., that failure to serve a defendant within one-year of filing a complaint is fatal and is a dismissal on the merits because the statute of limitations expired during the one-year period. Brief of Dr. Humphreys and COA, pp. 32-33; Brief of Mount Carmel, pp. 30-31.

{¶ 86} In *Kowalski*, the date of an accident was December 14, 2013, and the plaintiffs had until December 15, 2015, to file their action. *Id.* at ¶ 2 and 8. They filed a complaint against the owner of the car on December 9, 2015, and did not discover until after the statute of limitations had expired that the named defendant was not involved in the accident. The plaintiffs subsequently moved to amend the complaint under Civ.R. 15; alternatively, they asked to either add the driver as a new party or substitute her for the owner. Ultimately, on October 20, 2016, the trial court overruled the motion to add the driver as a defendant, but allowed plaintiffs to file an amended complaint naming the driver as the sole defendant. The trial court also noted in its decision that the time period for commencing the action, taking into account the date of the filing of the complaint, would not end for several more weeks, i.e., around December 9, 2016. *Id.* at ¶ 2-3.

{¶ 87} Although the plaintiffs immediately filed an amended complaint and requested service, the clerk of courts did not issue a summons. *Id.* at ¶ 4. Eventually,

plaintiffs asked for service on January 31, 2017 (after the initial one-year service period expired), and a summons was issued, but service was not successful.   After a motion to dismiss was filed on March 27, 2017, the plaintiffs again requested service and the driver was successfully served.   However, the trial court eventually dismissed the case for lack of service on the driver, and the plaintiffs appealed.   *Id.*

**{¶ 88}** On appeal, the Second District Court of Appeals rejected the plaintiffs' contention that they had until October 19, 2017 (one year from the date the amended complaint was filed) to serve the driver.   The court also rejected the application of *Goolsby*, stating that the difference was that in *Goolsby,* the plaintiff could have dismissed the claims in the original complaint "and refiled the same claims in an amended complaint because the statute of limitations for the claims had not yet expired."   *Kowalski*, 2d Dist. Montgomery No. 27577, 2017-Ohio-9310, at ¶ 12.    The court added that "[h]ere though, the statute of limitations had expired, so the Kowalskis could not have dismissed the negligence claim in their original complaint and refiled the claim in an amended complaint."   *Id.*

**{¶ 89}** This statement, read broadly, is inconsistent with the Second District's prior authority, which indicates that a party may dismiss a complaint after the statute of limitations has expired, even if service is not obtained within one year after the complaint is filed, and refile pursuant to R.C. 2305.19, if an attempt to commence the action was made within the one-year service period.   *See Schneider*, 2d Dist. Montgomery No. 15257, 1995 WL 737480, at *3-4.   As was noted above, most appellate districts, including the Tenth District Court of Appeals, follow this interpretation of the savings statute.   *See also LaNeve v. Atlas Recycling, Inc.*, 119 Ohio St.3d 324, 2008-Ohio-3921,

894 N.E.2d 25, ¶ 13 ("In appropriate circumstances, the saving statute of R.C. 2305.19(A) allows an original action that has either been properly commenced or 'attempted to be commenced' to be voluntarily dismissed and then refiled or replaced with an amended complaint against the same defendant based on the same injury, even if the applicable statute of limitations has expired at the time of the refiling").

{¶ 90} However, the Second District Court of Appeals did observe, shortly after making the above statement, that "[w]e see nothing in the record showing that the Kowalskis made an effort to ensure that Hernandez was served before the deadline." *Kowalski* at ¶ 15. If we read the court's comment from that perspective, it could be read as consistent with the court's prior authority.

{¶ 91} More importantly, however, the party to be served was *not* the same party that was named in the complaint that was filed prior to the expiration of the limitations period. *Kowalski* did not consider the fact that "[u]nder Civ.R. 15(C), an amendment relates back to the date of the original pleading if the parties are not changed." *Amerine v. Haughton Elevator Co., Div. of Reliance Elec. Co.*, 42 Ohio St.3d 57, 59, 537 N.E.2d 208 (1989); *LaNeve* at ¶ 11-12 (discussing requirements for relation back under Civ.R. 15(C) and (D)). In *Kowalski*, the court noted that it questioned whether substituting the driver, who was not included before the statute of limitations expired, was correct on the record before the court. However, the court stated that this issue was not before it. *Kowalski* at ¶ 10, fn. 2. Clearly, the parties in *Kowalski* were changed after the statute of limitations had expired, and there is no indication that the requirements in Civ.R. 15(C) were met, i.e., that "the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on

the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."   In addition, the facts as stated in the opinion do not indicate that the requirements for amendment under Civ.R. 15(D), where a party is unknown, were satisfied.   The case would have been more appropriately decided on this basis, but the court of appeals declined to do so.

{¶ 92} Based on the preceding discussion, we conclude that *Kowalski* deviates from the court's prior authority, and to the extent that it might be construed as consistent, there is nothing in the court's decision that is relevant to the case before us.   However, even if this were otherwise, opinions from other districts may be persuasive authority, but are not binding.   *See, e.g., McNeal v. Cofield*, 78 Ohio App.3d 35, 38, 603 N.E.2d 436 (10th Dist.1992); *City of Girard v. Giordano*, 2017-Ohio-5647, 94 N.E.3d 29, ¶ 36 (11th Dist.).

{¶ 93} We also note that we have considered and rejected the other cases cited by Appellees in support of their contention that the savings statute cannot apply because Moore never "commenced" his action by serving Dr. Humphreys within one year of filing the complaint.   For example, Appellees rely on *Anderson v. Borg-Warner*, 8th Dist. Cuyahoga Nos. 80551, 80926, 2003-Ohio-1500.   However, *Anderson* has been rejected by other districts and even by the Eighth District Court of Appeals.   *See, e.g., Amos*, 4th Dist. Hocking No. 04CA3, 2004-Ohio-5762, at ¶ 11 (noting that "[d]espite the *Anderson* court's logic, other appellate courts in this state, including the district that decided *Anderson* and this district, have not followed suit.   Instead, the majority of courts interpret *Thomas* to provide that the saving statute applies to preserve a plaintiff's cause of action

even if the plaintiff fails to perfect service within one year of filing the complaint.")

**{¶ 94}** We should also note that we have reviewed every Ohio case citing *Goolsby*, *Thomas*, and *Sisk*. There is no doubt that inconsistency exists among appellate decisions and even among decisions within some districts, nor is there any question that this is a complex subject. However, even if we concluded that the trial court should have dismissed the complaint because service was not obtained within one year, we would modify the judgment so that the dismissal would be without prejudice. This is abundantly clear, and if that occurred, Moore would be able to refile his complaint under the savings statute. *See, e.g., Thomas*, 79 Ohio St.3d at 225, 680 N.E.2d 997*; LaNeve*, 119 Ohio St.3d 324, 2008-Ohio-3921, 894 N.E.2d 25, at ¶ 13; *Fletcher*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, at ¶ 16. Thus, the inconsistencies, whatever they may be, would not change the result in the case before us, and that appears to be the teaching of the decisions in *Goolsby* and *Sisk*.

**{¶ 95}** As was noted previously, Appellees raised other grounds for summary judgment in the trial court, like Moore's lack of capacity to sue and failure to comply with the statute of limitations. However, the trial court concluded that these issues were moot in view of its decision on the lack of personal jurisdiction. Dr. Humphreys and COA state in their brief that the statute of limitations issue is not before us at this time, and we agree. *See* Brief of Dr. Humphreys and COA, p. 18, fn.3, and p. 20, fn.4.

**{¶ 96}** Mount Carmel argues in its brief that the complaint was a nullity and the action was never "commenced" within the statute of limitations because Michael Moore was not a real party in interest and could not legally file a pro se action on Justin's behalf.[3]

---

[3] Dr. Humphreys and COA state in their brief that this issue is also not before us because

According to Moore, we should not consider this issue because Mount Carmel failed to file a cross-assignment of error. However, App.R. 3(C)(2), as amended in 2013, indicates that "[a] person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error." Thus, we can consider Mount Carmel's argument.

{¶ 97} The facts relating to this issue are not in dispute. Moore was appointed by the probate court in July 2014 as conservator for Justin. Justin had been physically incapacitated since the medical incident of January 20, 2014, which had left him incapable of caring for himself, had impaired his ability to speak and communicate, and had rendered him unable to sign his name on documents or make a mark or signature on a piece of paper due to his physical disabilities. Doc. #201, Moore Affidavit, p.1, ¶s 1-4.

{¶ 98} The magistrate's decision in the probate court noted, as additional factual findings, that Justin was in the hospital, was bedridden, and had designated his father to assist him with medical decisions and to pursue litigation related to Justin's injuries. The magistrate further stated that:

> When visited by the Court Investigator, the applicant's ability to communicate was limited, but he demonstrated understanding regarding the Conservatorship and his desire that his father act in such capacity. The Estate Conservatorship is established primarily for litigation purposes.

Doc. #178, Ex. B, Magistrate's Decision; Judgment Entry Appointing Conservatorship, p.

---

the trial court concluded that it was moot. They argue that this issue will be ripe for decision by the trial court if we remand the case. Brief of Dr. Humphreys and COA, pp. 48-49, and fn.8.

1.

**{¶ 99}** The magistrate further recommended that Moore be appointed conservator of Justin's person and estate, and the probate court then granted the conservatorship. *Id.* at p. 2. Subsequently, in July 2015, Moore filed a pro se complaint on Justin's behalf against Appellees. In the complaint, Moore stated that he was "the Conservator of Justin Moore, opened in Cuyahoga County, Ohio and bearing Case Number 2014GRD188245," and that he was bringing the malpractice action for injuries and other damages sustained by Justin Moore beginning in January of 2014." Doc. #4., pp. 2-3. Service was then initiated, as noted above.

**{¶ 100}** With respect to the unauthorized practice of law, R.C. 4705.01 provides that:

No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which the person is not a party concerned, either by using or subscribing the person's own name, or the name of another person, unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules. * * *

**{¶ 101}** The Supreme Court of Ohio, which is charged with regulating the practice of law, has also promulgated Gov.Bar R. VII. The court's regulation "is built on the premise that limiting the practice of law to licensed attorneys is generally necessary to protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 102} Lack of capacity is an affirmative defense, which is waived under Civ.R. 9(A) if not specifically raised in an answer. *Mousa v. Mt. Carmel Health Sys., Inc.*, 10th Dist. Franklin No. 12AP-737, 2013-Ohio-2661, ¶ 13, citing *State ex rel. Downs v. Panioto*, 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 30. Dr. Humphreys and COA did not specifically raise lack of capacity in their answers, and they have waived this defense. See Doc. #s 50 and 51. Mount Carmel did raise this affirmative defense in its answer. *See* Doc. #45, p. 4.

{¶ 103} R.C. 2111.021 is the statute allowing appointment of a conservator, and states, in pertinent part, that:

A competent adult who is physically infirm may petition the probate court of the county in which the petitioner resides, to place, for a definite or indefinite period of time, the petitioner's person, any or all of the petitioner's real or personal property, or both under a conservatorship with the court. A petitioner either may grant specific powers to the conservator or court or may limit any powers granted by law to the conservator or court, except that the petitioner may not limit the powers granted to the court by this section and may not limit the requirement for bond as determined by the court. * * *

After a hearing, if the court finds that the petition was voluntarily filed and that the proposed conservator is suitable, the court shall issue an order of conservatorship. Upon issuance of the order, all sections of the Revised Code governing a guardianship of the person, the estate, or both, whichever is involved, except those sections the application of which specifically is limited by the petitioner, and all rules and procedures governing a

guardianship of the person, the estate, or both, shall apply to the conservatorship, including, but not limited to, applicable bond and accounting requirements.

{¶ 104} Neither the petition nor the probate court order limited the conservatorship, and all sections of the Revised Code pertaining to guardians, therefore, applied to Moore. As pertinent here, R.C. 2111.17 states that "[a] guardian may sue in the guardian's own name, describing the guardian as suing on behalf of the ward." In arguing that Moore could not bring this action and was engaging in the unauthorized practice of law, Mount Carmel first contends that a conservatorship differs from a guardianship and that since Justin was never declared incompetent, Justin could properly bring the action on his own behalf. However, the statutes cited above do not require a finding of incompetence, and, as was noted, the sections pertaining to guardians also apply to conservators, unless the court order provides otherwise.

{¶ 105} There is little authority interpreting these statutes or the authority of a conservator to bring an action, but as noted by Moore, the Second District Court of Appeals held that if a conservator had commenced an action in her own name as a party's conservator, she "would have been entitled to prosecute the claims for relief pro se." *Brown v. Wright*, 2d Dist. Montgomery No. 20560, 2006-Ohio-38, ¶ 13.

{¶ 106} *Brown* involved a situation in which a party brought an action in his own name, and his conservator informed the trial court that she was going to act in his place, pro se. The trial court told the conservator to obtain an attorney to represent the plaintiff. When she failed to do so or to intervene in the action as the plaintiff's personal representative, the court dismissed the action without prejudice. *Id*. at ¶ 3-4. On

appeal, the court stated that:

> Pauline Clay [the conservator] is not a real party in interest vis-a-vis the claims which Brown's complaint sets out. Clay's identification in the caption of the complaint merely denominates her address as a place where Kenneth Brown may be found. It does not satisfy the further, express requirement of Civ.R. 17(A) that notice of her capacity to sue on behalf of Brown in her representative capacity, as his conservator, be pleaded in plain and direct terms. Absent such notice, any judgment procured may not be final, or may lack its proper res judicata effect, and could expose the defender to multiple lawsuits. *See* Klein/Darling, Baldwin's Ohio Civil Practice (2d. Ed.), Section 17:3.
>
> Had Pauline Clay commenced the action in her name as Brown's conservator, Clay would have been entitled to prosecute the claims for relief pro se, though we do not endorse the wisdom of such a course. However, not having appeared in the matter as Civ.R. 17(A) requires when it was commenced, Clay is not entitled to prosecute the action at all because she is not a party. Clay could have subsequently moved to intervene as Brown's personal representative pursuant to Civ.R. 24(A), but she failed to make any such application, and the court was not required to construe the affidavits which Clay filed to be a motion to intervene. Therefore, because Clay was not a proper party to the action, she could not appear pro se, either for herself or on behalf of Brown.

*Id.* at ¶ 12-13.

{¶ 107} The court of appeals went on to conclude, also, that the conservator could not appear as the conservatee's attorney under R.C. 4705.01 because the statute precludes persons not admitted to the practice of law from appearing as another's attorney. *Id.* at ¶ 14-15. The Second District Court of Appeals, therefore, affirmed the dismissal of the action.

{¶ 108} Several points are pertinent here. First, in *Brown*, the trial court gave the conservator an opportunity to obtain an attorney or to intervene as the personal representative. It was only when she failed to do so that the court dismissed the action without prejudice. In the case before us, when the trial court granted Moore's request for an extension of time to file a Civ.R. 10(D) affidavit, the court raised the issue of Moore's ability to represent himself, since he was not a lawyer. However, the court also stated that nothing needed to be done concerning this point until after September 1, 2015, when Moore's affidavit of merit was due. *See* Doc. #43, p. 2, filed on July 23, 2015.

{¶ 109} By September 1, 2015, an attorney had entered an appearance on Moore's behalf. At that point, the issue would have been moot, since Moore had an attorney and Moore had already designated himself as Justin's personal representative.

{¶ 110} Mount Carmel contends that because Moore brought the action in his capacity as a personal representative, the action was never "commenced" and was a nullity. We disagree.

{¶ 111} Civ.R. 17(A) states that:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been

made for the benefit of another, *or a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought.* * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. *Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.*

(Emphasis added.)

{¶ 112} Thus, Moore, as conservator, was able to bring the action without joining Justin as a party. Even if we assumed for purposes of argument that Moore was required to join Justin, the action could not have been dismissed until he was given a reasonable opportunity to join Justin or substitute him as the real party in interest. Furthermore, under Civ.R. 17(A), the joinder or substitution would have rendered the action commenced as if Justin had been originally named. And, in that situation, Justin would have been entitled to proceed pro se.

{¶ 113} This was the approach followed in *Cushing v. Sheffield Lake*, 9th Dist. No. 13CA010464, 2014-Ohio-4617, 21 N.E.3d 671. In that case, the trial court dismissed the complaint of a wife who had brought a pro se wrongful death action individually and on behalf of her husband's estate. On appeal, the wife alleged that the trial court erred by dismissing the case rather than allowing her to amend the complaint under Civ.R. 15, and the court of appeals agreed. *Id.* at ¶ 3.

{¶ 114} The court of appeals noted that the wrongful death statute does not require a personal representative to bring the action, but only requires that the action be brought in the name of the personal representative. The court additionally stressed that " '[t]he only concern defendants have is that the action be brought in the name of the party authorized so that they may not again be ha[i]led into court to answer for the same wrong.' " *Cushing* at ¶ 4, quoting *Douglas v. Daniels Bros. Coal Co.*, 135 Ohio St. 641, 647-648, 22 N.E.2d 195 (1939). The court then commented that "[c]onsequently, the Ohio Supreme Court has recognized that when a beneficiary files a complaint in the name of the personal representative although, in fact, she has not been appointed as such, that mistake can be corrected by an amended pleading that relates back to the original date of filing." *Id.* at ¶ 5, citing *Douglas* at 648. Additionally, the court rejected the defendant's claim that the complaint was a nullity concerning the wife's capacity as personal representative and had to be dismissed with prejudice. The court commented that "it is appropriate for [the decedent's wife] - either acting pro se or through an attorney - to file a complaint in the name of the personal representative, and any defects in doing so can be cured by amendment." *Id.*

{¶ 115} As was noted, Moore sued on behalf of Justin as Justin's conservator, as he was authorized to do by court order, by statute, and by Civ.R. 17(A) as the real party in interest. However, even if he had done so improperly, any defect in pleading could have been cured by amendment, which would relate back to the date the complaint was filed.

{¶ 116} In a recent case, the trial court decided that a party who had filed a wrongful death action against Mount Carmel and other defendants lacked standing

because she had not been appointed administratrix of the decedent's estate within the applicable two-year statute of limitations. *Mousa*, 10th Dist. Franklin No. 12AP-737, 2013-Ohio-2661, at ¶ 7. As here, Mount Carmel claimed the lawsuit was a "nullity" because the plaintiff had not yet been appointed administratrix when the complaint was filed. *Id.* at ¶ 5. However, the Tenth District Court of Appeals disagreed and reversed the trial court's dismissal of the case.

**{¶ 117}** According to the Tenth District Court of Appeals, both standing and capacity to sue are needed to invoke a trial court's jurisdiction. *Id.* at ¶ 12. The court concluded that a party has standing if he or she is a real party in interest. *Id.* Based on the law at the time, the court of appeals also stated that standing is jurisdictional and is decided at the commencement of a suit. *Id.*, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 979 N.E.2d 1214, 2012–Ohio–5017, ¶ 24. While this is no longer strictly true, it has no bearing in the case before us, because Moore was a real party in interest and had standing under Civ.R. 17(A).[4]

**{¶ 118}** In *Mousa*, the Tenth District observed that capacity relates to "whether an individual may properly sue, either as an entity or on behalf of another," and is not a

---

[4] After *Schwartzwald*, the Supreme Court of Ohio clarified that standing does not involve subject-matter jurisdiction, but involves a court's jurisdiction over a particular matter. "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. * * * A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. * * * This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. The court also later held that "[p]roof of standing may be submitted *subsequent* to filing the complaint." (Emphasis sic.) *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 12.

jurisdictional requirement. *Mousa* at ¶ 13. In connection with this point, the court discussed prior decisions which had held that a party can proceed with suit even if an appointment is received after the statute of limitations has expired, and that the proper remedy is to substitute the party rather than dismiss the action. *Id.* at ¶ 17-18, citing *Douglas*, 135 Ohio St. at 647-48, 22 N.E.2d 195; *Stone v. Phillips*, 9th Dist. Summit No. 15908, 1993 WL 303281, *3 (Aug. 11, 1993); and *De Garza v. Chetister*, 62 Ohio App.2d 149, 155, 405 N.E.2d 331 (6th Dist.1978). Ultimately, the court concluded that the defense had waived the capacity issue and did not further address the point. *Mousa* at ¶ 20.

{¶ 119} Subsequently, however, the Tenth District Court of Appeals specifically stated that the reasoning employed in *Douglas* and other similar cases "is consistent with both the language and the spirit of the civil rules, and that the application of the relation back doctrine to the particular facts of this case offends none of the equitable principles underlying the statute of limitations. Thus, the trial court erred when it determined that appellant's amended complaint did not relate back to the date of the original and that the statute of limitations barred appellant's claims." *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. No. 14AP-272, 2014-Ohio-5354, 25 N.E.3d 355, ¶ 39.

{¶ 120} In *Eichenberger*, the plaintiff had not been appointed executor of an estate until after an action on behalf of a decedent was filed and the statute of limitations had expired. However, the plaintiff was subsequently appointed as executor and filed an amended complaint that related back to the original complaint. *Id.* at ¶ 5. As noted, the Tenth District concluded that the amended complaint "had the effect of curing the defect in the original complaint regarding appellant's capacity to sue on behalf of decedent's

estate." *Id.* at ¶ 31.

{¶ 121} In contrast to the plaintiffs in the above cases, Moore had standing when the complaint was filed, as he had been appointed Justin's conservator prior to that time. Furthermore, even if Moore lacked capacity, the appropriate approach would have been to allow amendment of the complaint, with the amendment relating back to the original filing. Moore's complaint, therefore, was not a "nullity."

{¶ 122} In *O'Brien v. White & Getgey, Inc.*, 1st Dist. Hamilton No. C-74610, 1975 WL 182077 (Oct. 27, 1995), the court of appeals affirmed the trial court's removal of a pro se administrator "as counsel," and remanded the case for further proceedings. *Id.* at *2. Had the action been a "nullity" due to the pro se representation, the court would not have remanded the case after affirming the removal of the pro se administrator. Furthermore, in *O'Brien*, the trial court clearly gave the appellant an opportunity to obtain counsel, but the appellant refused to do so. *Id.*

{¶ 123} In *Heath v. Teich*, 10th Dist. Franklin No. 06AP-1018, 2007-Ohio-2529, the Tenth District Court of Appeals cited *O'Brien* in connection with a motion to dismiss an estate's appeal where an administrator who was not the sole beneficiary attempted to prosecute an appeal on the estate's behalf without the services of a licensed attorney. *Id.* at ¶ 6-8. The court also noted its own prior authority indicating that " '[a] trust, like a corporation, cannot act on its own behalf but, instead, must act through an individual. Since only attorneys can represent another party in litigation before a court, necessarily an attorney must be engaged to represent a trust.' " *Id.* at ¶ 9, quoting *Tubalcain Trust v. Cornerstone Constr., Inc.* 10th Dist. Franklin No. 93APE12-1701, *1 (May 26, 1994).

{¶ 124} In *Tubalcain*, the court of appeals commented that "[t]he basic problem in

this case is that plaintiff, Tubalcain Trust, *refuses* to obtain counsel to represent it and, instead, one of its trustees, Robert E. Williams, purports to represent Tubalcain Trust, even though he is not licensed to practice law." (Emphasis added.) *Id.* Unlike the trustee in *Tubalcain*, Moore did not refuse to obtain counsel; to the contrary, he had obtained counsel by the time the trial court indicated the issue might be considered.

{¶ 125} In *Heath*, the court of appeals also cited *Otto v. Patterson*, 173 Ohio St. 174, 175, 180 N.E.2d 575 (1962), in stating that "the requirement * * * in R.C. 2125.02 that the wrongful death action be brought in the name of the personal representative of the decedent's estate does not supplant or override the limits on who may practice law set forth in R.C. 4705.01." *Heath* at ¶ 11.

{¶ 126} *Otto* involved a prohibition action brought by a pro se plaintiff seeking to prohibit the trial court from denying him the right to prosecute a taxpayer suit on his own behalf and that of other taxpayers without the aid of an attorney. *Otto* at 174-175. Notably, the defendants filed a motion to dismiss in the prohibition action, seeking an order requiring the plaintiff to obtain counsel within 10 days or suffer dismissal. *Id.* at 175. After the court of appeals dismissed the mandamus action, the Supreme Court of Ohio affirmed, concluding that the taxpayer was not a licensed attorney and could not initiate and prosecute a taxpayer's suit on behalf of others without a licensed attorney's services. *Id.* Again, however, the advocated approach was to provide an opportunity for the plaintiff to obtain counsel, and dismissal occurred after he failed to do so.

{¶ 127} In support of its argument, Mount Carmel cites *Williams v. Griffith*, 10th Dist. Franklin No. 09AP-28, 2009-Ohio-4045. In that case, a refiled action was dismissed on two grounds: (1) the plaintiff's failure to file an affidavit of merit; and (2) the

plaintiff lacked standing or capacity as an attorney to maintain the claim. *Id.* at ¶ 4. The court of appeals first agreed that the claim was medical and was properly dismissed due to the failure to file an affidavit. *Id.* at ¶ 7-8.

**{¶ 128}** With respect to the second issue, the court's discussion is somewhat confusing. Appellant apparently brought the refiled action, attempting to represent himself, his deceased wife, and his son. *Id.* at ¶ 2, fn.1. It is not even clear if the appellant filed as a personal representative of his wife's estate, although he claimed on appeal that he was the administrator. *Id.* at ¶ 11. In any event, the court of appeals commented that "[t]he trial court found that appellant could represent himself or could present himself as the administrator of [his wife's] estate, but he could not represent others because to do so would constitute the unauthorized practice of law. Appellant argues that he is the administrator of [his wife's] estate, and that he has standing to represent his own and his son's interests." *Id.* at ¶ 11.

**{¶ 129}** After discussing standing and the unauthorized practice of law, the court of appeals stated that "Appellant was appointed as the administrator of the estate of [his wife]. However, he is not an attorney. Thus, while he may represent himself, pro se, he may not represent others that the statute designates as next of kin, because to represent others would constitute the unauthorized practice of law. As the trial court found, appellant could not proceed pro se by representing only himself, because the action has to be maintained by the personal representative on behalf of the statutory next of kin in one action. R.C. 2125.02. Thus, the trial court did not err in finding that appellant could not represent *his son* without constituting the unauthorized practice of law." (Emphasis added.) *Id.*

{¶ 130} The court of appeals did not state in *Williams* that the complaint was a "nullity," nor is it clear whether the appellant was given an opportunity to obtain counsel. Furthermore, the court of appeals noted that the husband had filed a notice of appeal only on his own behalf. That, in itself, would have been fatal to his appeal, since, as the court observed, he could not bring a wrongful death action on his own behalf, and since he failed to appeal on behalf of the estate, the trial court's decision as to the only appropriate party would have been final. As a result, the court did not even need to consider the appellant's second assignment of error.

{¶ 131} The point here is that the trial court, itself, raised a potential issue with Moore's lack of an attorney, and the issue was resolved by an attorney entering an appearance shortly thereafter. We see no reason why the trial court should have dismissed the action, which was brought by a real party in interest, and was prosecuted by a licensed attorney acting on behalf of that party. As the Tenth District Court of Appeals observed in *Eichenberger*, the " '[t]he spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies.' " *Eichenberger*, 10th Dist. No. 14AP-272, 2014-Ohio-5354, 25 N.E.3d 355, at ¶ 32, quoting *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). The law also favors resolving cases on their merits. *Id. See also Stancourt v. Worthington City School Dist. Bd. of Edn.*, 164 Ohio App.3d 184, 2005-Ohio-5702, 841 N.E.2d 812, ¶ 84 (10th Dist.). Moreover, as was noted, any amendment would have related back, i.e., Moore could have substituted or added Justin as a party, and Justin obviously would have been entitled to proceed pro se.

{¶ 132} Based on the preceding discussion, we conclude that the First Assignment

of Error has merit.   The assignment of error, therefore, is sustained.

### III.   Dismissal of Vicarious Liability Claims

{¶ 133} Moore's Second Assignment of Error states that:

The Trial Court Erred by Dismissing the Vicarious Liability Claims Against Central Ohio Anesthesia, Inc. and St. Ann's Where the Court Erroneously Dismissed the Claims Against Dr. Humphreys.

{¶ 134} Under this assignment of error, Moore contends that because the trial court erred in dismissing his claims against Dr. Humphreys, the trial court also erred in dismissing his claims against COA and Mount Carmel, which were based, respectively, on respondeat superior and agency by estoppel.

{¶ 135} The trial court dismissed the claims against Mount Carmel, based solely on the fact that Dr. Humphreys was an independent contractor and that the hospital could not be liable where the claims against him had been extinguished.   Doc. #350 at pp. 10-11.

{¶ 136} The Supreme Court of Ohio has held that "agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician.   Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 2.   "Agency by estoppel is not a direct claim against a hospital, but an indirect claim for the vicarious liability of an independent contractor with whom the hospital contracted for professional services.   Furthermore, if the independent contractor is not

and cannot be liable because of the expiration of the statute of limitations, no potential liability exists to flow through to the secondary party, i.e., the hospital, under an agency theory." *Id.* at ¶ 27.

**{¶ 137}** Because we have concluded that the trial court erred in dismissing the claims against Dr. Humphreys, the court likewise erred in dismissing the claims against Mount Carmel.

**{¶ 138}** For the same reasons, the trial court erred in dismissing the claims against COA. Again, the trial court concluded that COA could not be held liable in the absence of potential liability on Dr. Humphrey's part.

**{¶ 139}** As a general rule, employers or principals are vicariously liable for their employees' or agents' torts based on the doctrine of respondeat superior. *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994). Where hospitals or other providers of medical services are involved, principals are vicariously liable for negligent acts of employees over whom they retain control or have a right to control while their employees are acting within the scope of employment. *Dinges v. St. Luke's Hosp.*, 2012-Ohio-2422, 971 N.E.2d 1045, ¶ 28 (6th Dist.), citing *Smith v. Midwest Health Servs., Inc.* 1st Dist. Hamilton No. C-910754, 1993 WL 64260 (Mar. 10, 1993). In this situation, the employee's negligence is primary, and the employer's liability is secondary or passive. *Comer*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 20; *Goscenski v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 13AP-585, 2014-Ohio-3426, ¶ 11.

**{¶ 140}** However, the Supreme Court of Ohio has also said that while "a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously

liable only when an agent could be held directly liable." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 22. The reason is that "liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal. If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions." *Comer* at ¶ 20, citing *Losito v. Kruse*, 136 Ohio St. 183, 24 N.E.2d 705 (1940) and *Herron v. Youngstown*, 136 Ohio St. 190, 24 N.E.2d 708 (1940).

{¶ 141} Because the action against Dr. Humphreys was improperly dismissed, he is potentially liable for the alleged injuries to Justin, and COA and Mount Carmel were also incorrectly dismissed.

{¶ 142} In view of the preceding discussion, the Second Assignment of Error is sustained.

IV.   Status of Dr. Humphreys as an Employee of COA

{¶ 143} Moore's Third Assignment of Error states as follows:

The Trial Court Erred by Dismissing the Respondeat Superior Claim Against Central Ohio Anesthesia, Inc. Because Dr. Humphreys Was an Employee of Central Ohio Anesthesia.

{¶ 144} Under this assignment of error, Moore contends that the trial court erred in granting summary judgment to COA because Dr. Humphreys was an employee as well as a shareholder of COA. According to Moore, a decision of the Supreme Court of Ohio issued after *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, indicates that medical negligence claims against an employee of a corporation survive even if the claims

against a physician-employee are barred. *See* Moore Brief, p. 26, citing *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082. Moore also relies on *Dinges*, 2012-Ohio-2422, 971 N.E.2d 1045, which, according to Moore, concluded that *Wuerth* does not apply where a doctor's relationship to a medical corporation is as an employee rather than a partner or co-owner.

**{¶ 145}** The trial court rejected Moore's argument, distinguishing *Sawicki* because the immunity defense in that case was not a decision on substantive liability. In contrast, according to the trial court, its own decision was based on the "statute of limitations," which was a determination of substantive liability. The trial court also rejected the application of *Dinges*. In this regard, the court concluded that no court other than *Dinges* had narrowed *Wuerth* in the manner suggested in *Dinges*. Doc. #350, pp. 12-13.

**{¶ 146}** Because we have already concluded that the trial court erred in granting summary judgment in favor of COA, this assignment of error is moot, and we need not consider it further. Accordingly, the Third Assignment of Error is overruled as moot.

## V. Conclusion

**{¶ 147}** Moore's First and Second Assignments of Error having been sustained, and his Third Assignment of Error having been overruled as moot, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

DONOVAN, J., concurs.

TUCKER, J., concurring:

**{¶ 148}** I concur in the thorough, well-reasoned majority opinion. I write separately to note that while the issue of when the savings statute is applicable is difficult,

with this difficulty caused, I think, by the conflicting case law, the issue is relatively straightforward when the focus is upon the events necessary to trigger such application. The events that must occur to trigger use of the savings statute are as follows: (1) the initial action must have been filed within the statute of limitations period; (2) the action must have been commenced, or attempted to be commenced, under Civ.R. 3(A), and (3) the action must have failed otherwise than upon the merits after the expiration of the statute of limitations. *Korn v. Mackey*, 2d Dist. Montgomery No. 20727, 2005-Ohio-2768, ¶ 20.

{¶ 149} There is no dispute, at least for purposes of the present discussion, that Moore filed the medical negligence cause of action against Humphreys within the statute of limitations period. Thus, for purposes of this discussion, the first requirement has been met.

{¶ 150} The next required event is commencement, or attempted commencement, of the medical negligence claim against Humphreys in accordance with Civ.R. 3(A). As set forth in the majority opinion, attempted commencement does not have a due diligence component, but, instead, requires only that service consistent with the Civil Rules be attempted within one year of the filing of the complaint. There can be no dispute that Moore attempted to serve Humphreys by certified mail within one year of the complaint being filed.

{¶ 151} The final event necessary for application of the savings statute is the failure of the initial action otherwise than upon the merits after the expiration of the statute of limitations. This requirement, in this case, is the most difficult, because the cause of action against Humphreys was not dismissed in a traditional fashion. However, two Ohio

Supreme Court decisions lead to the conclusion that Moore's service request on March 2, 2017 constituted, by operation of law, a dismissal of the cause of action against Humphreys and also the refiling of a new, identical cause of action, with this dismissal being otherwise than on the merits.

{¶ 152} The Ohio Supreme Court, in *Goolsby v. Anderson Concrete Corp.*, 61 Ohio St.3d 549, 575 N.E.2d 801 (1991), ruled that when service of process has not been accomplished within one year and the dismissal of the action and the refiling of an identical action would allow another year for service to be accomplished, a new request for service will be treated as a refiling of the complaint. Though not explicitly stated, a refiling requires a dismissal. Therefore, Goolsby's request for service acted as both a dismissal and refiling of the cause of action. Further, and again not explicitly stated, the dismissal, since a refiling was allowed, had to be otherwise than upon the merits.

{¶ 153} The Ohio Supreme Court, in *Sisk & Assoc., Inc. v. Commt. to Elect Timothy Grendell*, 123 Ohio St.3d 447, 2009-Ohio-5591, 917 N.E.2d 271, explicitly stated that, when a plaintiff files instructions for service after the Civ.R. 3(A) one year period, this, by operation of law, is a notice of dismissal of the claim. *Id.* at syllabus. The Supreme Court further ruled that since the plaintiff had previously voluntarily dismissed the complaint, the second dismissal, under Civ.R. 41(A)(1)(a), was an adjudication on the merits forcing dismissal of the action. Therefore, if there had not been a first dismissal, the dismissal by operation of law, presumably, being treated as a voluntary dismissal under Civ.R. 41(A)(1), would have been without prejudice and, thus, a dismissal otherwise than on the merits. The logic of these cases forces the conclusion that Moore's service request on March 2, 2017 acted as a dismissal otherwise than on the

merits and also the refiling of an identical cause of action against Humphreys.

**{¶ 154}** Moore has met the requirement to allow use of the savings statute. And, since Humphreys was served shortly after the dismissal, the savings statute acts to allow Moore's medical negligence cause of action against Humphreys to continue.

. . . . . . . . . . . .

(Hon. Jeffrey M. Welbaum, Hon. Mary E. Donovan, and Hon. Michael L. Tucker, Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

David I. Shroyer
Grier D. Schaffer
Theodore M. Munsell
Joel E. Sechler
Emily M. Vincent
Hon. Richard A. Frye